ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona
FREDERICK A. BATTISTA
Assistant U.S. Attorney
Maryland State Bar Member
Email: Fred.Battista@usdoj.gov
FRANK T. GALATI
Assistant U.S. Attorney
Arizona State Bar No. 003404
Email: Frank.Galati@usdoj.gov
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona  85004
Telephone: 602-514-7500

*Attorneys for the United States*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Gary Leonard Pierce, et al.,<br><br>　　　　　Defendants. | CR-17-00713-PHX-JJT (JZB)<br><br>**RESPONSE TO MOTIONS TO COMPEL [DOC. 34, 35 & 38] AND MOTION FOR DISCOVERY [DOC. 36] and MOTION FOR PROTECTIVE ORDERS** |

　　　　The United States respectfully files its Response to the Joint Motion to Compel filed by defendants GARY LEONARD PIERCE and SHERRY ANN PIERCE (Doc. 34 and 35), the Motion to Compel filed by defendant GEORGE HARRY JOHNSON (Doc. 38), and the Motion for Discovery filed by defendant JAMES FRANKLIN NORTON (Doc. 36).  It is our position that, for the reasons stated in this response, the motions should be denied and for those very same reasons, protective orders should issue for both personal identifying information (PII) and certain confidential materials.  Accordingly, we also move, pursuant to Fed. R. Crim. P. 16(d)(1) that the Court enter the attached proposed protective orders.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1.    Facts**

The United States does not take issue with the facts recited in the motions. Defendants PIERCE have attached some emails to their motions and they, for the most part, accurately portray the parties' dispute. The sole missing relevant email is that of Ms. Adams of June 19, 2017. There, in response to the United States providing its proposed stipulated protective orders to the defense, Ms. Adams incorrectly claimed that Rule 16 of the Federal Rules of Criminal procedure provides that:

> [P]rotective Orders are only appropriate "where there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed."

Additionally, Ms. Adams incorrectly asserted that because the government had "[a]lready issued its own press release . . . we are not going to agree to your proposed gag order."[1]

**2.    The Discovery**

The discovery in this case is rather limited. The United States is prepared to make disclosure of the bulk of the evidence that consists of the following:

(a)    Ten audio recordings of witness interviews or contacts, including three involving defendants and seven interviews of other persons. Only one of these recordings pertains exclusively to this case.

(b)    Fourteen FBI 302s that summarize witness interviews or contacts. Only two of these pertain exclusively to this case.

(c)    Six reports of collected items, only three of which pertain exclusively to this case.

(d)    Six packages of records from financial institutions, all of which contain personal identifying information.

---

[1] In fact, the United States has issued no press releases about this case.

(e) Five items containing records and emails that contain personal identifying information.

### 3. A Limited Protective Order Re Confidential Information is Appropriate

Attached to the Joint Motion to Compel is an email dated June 22, 2017. (Doc. 34-3). That message to defense counsels was the government's good-faith attempt to explain our reasons for seeking the defendants' joint agreement to a protective order and to assure that we did not seek to limit in any way the defendants' use of disclosed material in defending themselves in this case. In particular, we stated:

> All of you certainly know that the facts that resulted in the indictment of your clients were discovered during a much larger and more intensive investigation. Mr. Pierce, Mr. Norton and many others have been interviewed by the FBI concerning that larger investigation. Of course, FBI interviews may result in the creation of 302s, recordings and transcripts. The larger investigation is unrelated to our case, but the government will disclose to you interviews of Mr. Pierce, Mr. Norton and others in their entirety despite the fact that they pertain to the on-going, larger investigation. Simply put, we will be disclosing to you evidence in another investigation. What we seek to prevent through the proposed confidential information protective order is public dissemination of that evidence for purposes unrelated to your clients' defenses. We do not want persons who are unrelated to this case getting their hands on evidence that the FBI has gathered in an on-going investigation. We do not seek to limit your use of the evidence in defending your clients. And we do not seek to prevent your clients from telling anyone they wish that they were interviewed by the FBI or what they said to the FBI. To call our proposal, as did Ms. Adams, a "gag order" is clearly incorrect. What we seek to limit is the publication of FBI 302s, and recordings and transcripts of witness interviews. The release of the contents of these materials pretrial outside of this case, clearly has the potential of serious negative effects on both this case and the other pending investigation.

As is plain from our email, it is the government's intention to make extensive disclosure in this matter and not to withhold clearly discoverable material. We not only intend to provide to the defense material pertinent to this case, but also some "evidence in another investigation," one that we characterized as a "much larger and more intensive

investigation."[2] We are *not* attempting to nit-pick by claiming, for instance, that 302s, or parts of 302s, pertaining to interviews of one or more of the defendants are not discoverable in this case because they pertain to another. Additionally, we do not seek to prevent any defendant or any witness from telling anyone what he or she independently knows or may have said about this case or the larger investigation; the proposed protective order regarding confidential information simply seeks to prevent the disclosure of sensitive case discovery for purposes other than the defense of this case. In short, we do not seek a blanket gag order and a defense claim that we do is incorrect. However, we certainly do seek to prevent evidence gathered in an ongoing investigation from being revealed to individuals or the public at large for reasons unrelated to the defense of this case.

### 4. The Case Law

Rule 16(d)(1) authorizes the Court "for good cause" to "restrict . . . discovery . . . or grant other appropriate relief." The 1974 Amendment Advisory Committee Notes acknowledge that "the rule does not attempt to indicate when a protective order should be entered." As the Supreme Court has noted, "much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984). The Government does not seek to seal otherwise public court records, but rather to protect otherwise non-public information produced to the defense in discovery. Protecting this information requires "good cause." See San Jose Mercury News, Inc. v. U.S. District Court, 187 F.3d 1095, 1103 (9th Cir. 1999) (applying the "good cause" standard to evaluate a civil protective order under Rule 26(c) of the Federal Rules of Civil Procedure); *c.f.* Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1213 (9th Cir. 2002) ("When a court grants a protective order for

---

[2] While we did not so specify in our email to the defense, the larger investigation is ongoing.

information produced during discovery, it already has determined that "good cause" exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality.") and Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1179-80 (9th 2006).

Accordingly, upon a showing of good cause by the moving party, the Court possesses wide discretion in fashioning an appropriate order. The United States submits that good cause exists for three reasons. First, unwarranted and unnecessary dissemination of discovery materials will likely jeopardize the ongoing, larger investigation. Second, as readily demonstrated by press reports that appeared immediately from what we believe to be the poorly conceived public airing of our June 22 email in the Joint Motion to Compel, uncharged and presumptively innocent individuals already have been, and will be, subjected to widespread public speculation. Third, persons who may have additional information that may aid a party in this case, including one or more of the defendants, or the other investigation, may be hesitant to come forward and offer assistance if their identities are released for no reason related to the defense of this case and end up splashed across headlines.

Controlling Ninth Circuit law interpreting or applying Rule 16(d)(1) is sparse. Indeed, the leading Ninth Circuit case holdings on the issuance of protective orders do not interpret or apply Rule 16(d)(1).[3] Rather, they are civil cases that apply and interpret Rule

---

[3] District courts in the Ninth Circuit have applied a Civil Rule 26(c) analysis in criminal cases. One is United States v. Arredondo, 2012 WL 1946955 (D. Arizona, May 30, 2012), a case cited by the defendants. However, we submit that Arredondo should not be accorded much weight. There the parties filed an "Amended Consent Motion for Protective Order" that regarded "discovery materials, not documents filed with the District Court". Because the stipulated motion failed to demonstrate good cause, the magistrate judge denied the stipulation to a protective order. We respectfully find Arredondo to be unpersuasive because, among other reasons, it did not critically analyze Ninth Circuit precedent. For example, Arredondo failed to honor a stipulated order because it failed to establish good cause, while apparently ignoring In re Roman Catholic Archbishop of Portland, 661 F. 3d 417, 424 (9th Cir. 2011), which states that "While courts generally make a finding of good cause before issuing a protective order, a court need not do so where (as here) the parties stipulate to such an order."

A far more sound approach was taken in United States v. Patkar, 2008 WL 233062

- 5 -

26(c) of the Federal Rules of Civil Procedure or the common law right of public access to judicial records.[4] Indeed, all Ninth Circuit cases cited in the defendants' Joint Motion to Compel are civil cases, each distinguishable from this case on its facts.[5] (Doc. 34)

As did the court in United States v. Patkar, 2008 WL 233062 (D.Hawaii Jan. 28, 2008), we do find reference to Rule 26(c) of the Federal Rules of Civil Procedure to be a "useful tool" in reviewing our claim that good cause exists under Rule 16(d)(1) for entry of a protective order. Subsequent to Patkar, the Ninth Circuit decided Archbishop of Portland, *supra.* There the court held that in considering a claim of good cause for a protective order, a court must first determine whether "particularized harm will result from disclosure of information to the public." 661 F.3d at 1211.

**5.     Good Cause Under Rule 16(d)(1)**

As is stated above, we wish to make extensive disclosure to the defendants. Included in that disclosure is evidence gathered as part of another larger investigation. By way of example, two of the four defendants were interviewed by the FBI regarding the larger and ongoing investigation. Audio recordings and 302s of those interviews are contained in the discovery materials. The government may perhaps be in a position to argue that portions

---

(D.Hawaii Jan. 28, 2008). There, the district court recognized that "civil judicial records" (i.e., those filed with the court) differ from criminal pre-trial discovery, implying that the public's interest in the former is far greater than the in the latter. While "not convinced that the Ninth Circuit would apply these civil standards to protective orders in criminal cases", the Patkar court found reference to Civil Rule 26(c) to be "a useful tool to review the government's claim" to good cause.

[4] We refer to In re Roman Catholic Archbishop of Portland, 661 F.3d 417 (9th Cir. 2011) and San Jose Mercury News, Inc. v. U.S. District Court, 187 F. 3d 1096 (9th Cir. 1999), civil cases that held that material produced in pre-trial discovery is presumptively public and that presumption may be rebutted only by a showing of good cause.

[5] (1) San Jose Mercury News, Inc. v. U.S. District Court, Id. at 1101 resolved the question: "does the public have a pre-judgment right of access to judicial records in civil cases?"; primarily by analyzing the applying the common law right of public access to judicial records; (2) Foltz v. State Farm Mutual Auto Insurance Co., 331 F.3d 1122 (9th Cir. 2003) involves a post-settlement attempt by parties other than the original litigants to gain access to materials the court had placed under seal; (3) In Beckman Industries, Inc. v. International Insurance Co., 966 F.2d 470 (9th Cir. 1992), after settlement of a civil action, intervenors sought access to six depositions that were taken during discovery and were kept confidential pursuant to a stipulated blanket discovery order.

of these items are not discoverable because they do not pertain to this case. We do not make that assertion and will fully disclose the items. We submit that it cannot be denied that disclosure of an ongoing criminal investigation to the public, the press or other persons will result in harm. Other courts have certainly recognized this. United States v. Amodeo, 71 F.3d 1044, 1050 (2nd Cir. 1995) ("As a general proposition, courts have repeatedly recognized that materials . . . can be kept from the public if their dissemination might adversely affect law enforcement interests."(Internal quotes omitted)); United States v. Smith, 985 F. Supp. 506, 521-524 (S.D.N.Y. 2013).

In addition to the inevitable harm to an ongoing investigation caused by public disclosure, we submit that harm to individuals has already occurred and will again occur by public disclosure of discovery materials. As the Court is readily able to see, the defendants, after accusing the government of issuing a press release in this case without an basis in fact, chose to attach our email correspondence to their Joint Motion to Compel. That correspondence explained to defendants that we wished to protect, through a stipulated protective order, disclosure of information about an ongoing investigation. The Joint Motion to Compel made that communication public and the result was press speculation about that ongoing investigation, including the naming of specific, uncharged and presumptively innocent individuals.[6] Courts have recognized the privacy concerns of individuals are providing good cause for issuance of a protective order. United States v. Patkar, supra.

We also note that the public has no right to access criminal pretrial discovery materials. United States v. Amodeo, 71 F.3d at 1050 ("Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's [to public access of judicial records] reach…"); United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) ("Moreover, documents

---

[6] Laurie Roberts, Roberts: *Is a bombshell about to be dropped on Arizona's power elite?*, AZCENTRAL (July 5, 2017), http://www.azcentral.com/story/opinion/op-ed/laurieroberts/2017/07/05/roberts-bombshell-dropped-arizonas-power-elite/452737001/

collected during discovery are not judicial records. Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation."). We submit that entry of a protective order denying public access to records that the public has no right to access does not prejudice anyone.

We emphasize the fact that the proposed protective orders (both with respect to confidential information and personal identifying information (PII) discussed below) in no way seek to prevent the use or disclosure of the discovery in furtherance of the defense of this case.[7] The potential harm to the other investigation, charged and uncharged persons and potential witnesses is clearly great. While we recognize that the burden is on the government to establish good cause, the defendants have not suggested a valid use to which they wish to put the discovery material beyond their defense. It is difficult to imagine any prejudice to the defendants by entry of the proposed orders.

We submit that there being no public right to access pretrial discovery materials, there is no public interest to be weighed against the government's interest in keeping materials related to an ongoing investigation from the public. Accordingly, the second prong of the Archbishop of Portland test, weighing the public interest against the private interest, is satisfied.[8] Likewise, redaction of documents or portions of documents that the defense may use without limitation in preparing a defense and in which the public has no legitimate claim to access is unwarranted and unnecessary.

---

[7] The proposed orders apply to the discovery currently in the possession of the United States and any prospective discovery.
[8] In re Roman Catholic Archbishop of Portland in Oregon, 661 F.3d at 424 (*citing* Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1211 (9th Cir. 2002) ("if the court concludes that [a specific harm] will result from disclosure of the discovery documents, then it must proceed to balance 'the public and private interests to decide whether [maintaining] a protective order is necessary.'").

**6.      Personal Identifying Information**

In our June 22 email to defense counsels, we presumed that the entry of a protective order regarding personal identifiers was a routine matter. We said:

> First, allow us to address the proposed stipulation concerning personal identifying information (PII). As you know, the purpose of the proposed protective order is to allow the government to make disclosure without the necessity of redacting personal identifiers and with the confidence that PII will be protected. We are of the opinion that protecting the PII of witnesses is not a controversial matter. Indeed, in another context, the federal rules require it. See Fed.Crim.R. 49.1. Please be advised, the current contact information for third-party witnesses will be redacted by the prosecution under any circumstances.
>
> [B]ecause we think there should be no controversy concerning our proposed PII order, and in the interest of moving forward, we will assume that Ms. Adams' objection pertains only to the proposed protective order regarding confidential information, and that there is no objection to the proposed PII protective order. Please inform us forthwith if there are any objections to the proposed protective order regarding PII.

With respect to PII, the release of this information could result in identity theft or harassment. In fact, the District of Arizona has already recognized the importance of concealing personal identifying information in court documents.  District of Arizona General Order 08-11. The subject proposed protective order would prevent that same sort of private information from being disseminated beyond those persons necessary to defendants' defense, thereby limiting – if not eliminating – the risks associated with its public release. Mehl v. Blanas, 241 F.R.D. 653, 659-60 (N.D. Cal. 2007) (imposing a protective order for personal identifier information in part to protect persons from the possibility of identity theft).

We have failed to gain unanimous agreement concerning personal identifiers, so we are asking the Court to enter a protective order regarding PII. As previously stated, we seek to disclose multiple records, including financial records, emails, wage records and credit records that contain PII. We seek to impose the same limits on public disclosure as the Rule 49.1 imposes on filings with the court, with the addition of email addresses. Again, we are

hard-pressed to ascertain a valid reason for any defendant to wish to disclose PII that they obtain access to in the course of the discovery of this case for any reason other than the defense of this case.

### 7. Conclusion

For the reasons stated in this response and motion, the United States respectfully asks that the Motions to Compel filed by defendants GARY LEONARD PIERCE, SHERRY ANN PIERCE, and GEORGE HARRY JOHNSON (Doc. 34, 35 and 38), and the Motion for Discovery filed by defendant JAMES FRANKLIN NORTON (Doc. 36) be denied and that the government's proposed protective orders be entered.

Excludable delay under 18 U.S.C. § 3161(h) may occur as a result of this motion and an order based thereon.

Respectfully submitted this 13th day of July, 2017.

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

*s/ Frederick A. Battista*
FREDERICK A. BATTISTA
FRANK T. GALATI
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Patricia Ann Gitre, Esq.
PATRICIA ANN GITRE, PLC
801 N. 1st Ave.
Phoenix, AZ 85003
Tel: (623) 500-2248
Email: patgitre@patriciagitre.com
*Attorney for defendant Gary Leonard Pierce*

Hannah Hatch Porter, Esq.
Jay Steven Volquardsen, Esq.
Woodrow Charles Thompson, Esq.
GALLAGHER & KENNEDY PA
2575 E Camelback Rd., Ste. 1100
Phoenix, AZ 85016−9225
Tel: (602) 530-8175
Email: hannah.porter@gknet.com
*Attorneys for defendant George Harry Johnson*

Ivan Kurian Mathew, Esq.
MATHEW & ASSOCIATES
6245 N 24th Pkwy., Ste. 207
Phoenix, AZ 85016
Tel: (602) 254-8088
Email: ikmathew@mathewlaw.com
*Attorney for defendant James Franklin Norton*

Ashley D Adams, Esq.
ASHLEY D ADAMS PLC
4301 N 75th St., Ste. 105
Scottsdale, AZ 85251
Tel: (480) 219−1366
Email: aadams@azwhitecollarcrime.com
*Attorney for defendant Sherry Ann Pierce*

s/ Lauren M. Routen
U.S. Attorney's Office